# 23-1082

### 23-1172 (XAP)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

JOSEPH VELLALI, NANCY S. LOWERS, JAN M. TASCHNER, AND JAMES MANCINI,
Individually and as representatives of a class of participants and beneficiaries on
behalf of the Yale University Retirement Account Plan,

*Plaintiffs-Appellants-Cross-Appellees*,

RANAY P. CIRILLO AND TARA HEARD,

*Plaintiffs*,

v.

YALE UNIVERSITY, MICHAEL A. PEEL, AND THE RETIREMENT PLAN FIDUCIARY
COMMITTEE,

*Defendants-Appellees-Cross-Appellants*.

---

Appeal from the United States District Court for the District of Connecticut
Hon. Alvin W. Thompson, No. 3:16-cv-01345-AWT

---

## APPELLANTS' PRINCIPAL BRIEF

---

Jerome J. Schlichter
Sean E. Soyars
Nathan D. Stump
Joel D. Rohlf
SCHLICHTER BOGARD LLP
100 S. Fourth Street, Suite 1200
St. Louis, Missouri 63102
(314) 621-6115

*Counsel for Plaintiffs-Appellants-Cross-Appellees*

# CONTENTS

Authorities ........................................................................................................iii

Jurisdictional Statement ................................................................................ 1

Statement of the Issues ................................................................................. 2

Statement of the Case .................................................................................... 3

   I.   Local Rule 28.1(b) information ................................................... 3

   II.  Statutory background ................................................................... 4

   III. Factual background ...................................................................... 7

   IV. Proceedings below ..................................................................... 10

      A.  Pre-trial rulings ................................................................. 10

      B.  Trial decision .................................................................... 12

Summary of the Argument .......................................................................... 15

Argument ...................................................................................................... 17

   I.   Plaintiffs are entitled to a new trial on the issue of damages on the
       First Claim because the jury instructions misstated Defendants'
       burden. ........................................................................................ 17

      A.  The burden under ERISA shifts to the defendant to disprove any
          portion of potential damages. ........................................... 18

      B.  To carry their burden, Defendants had to prove that a prudent
          fiduciary *would* have made the same decisions, not merely *could*
          have. .................................................................................. 20

          1.  Determining whether a breach resulted in damages depends
             on what likely *would* have occurred in the absence of the
             breach. ........................................................................ 20

          2.  The discretion afforded to a fiduciary who has *complied* with
             its statutory duties does not justify a lenient loss standard for
             one who has *violated* its duties. ................................... 25

      C.  The district court's erroneous and confusing instructions
          prejudiced Plaintiffs, warranting a new trial on the question of
          damages. ........................................................................... 27

          1.  The instructions and verdict form included an erroneous
             "could have" standard. ............................................... 27

2. The verdict form did not accurately implement the burden-shifting framework. ........................................................ 28

3. The erroneous instructions and verdict form were prejudicial. ..... 32

II. Plaintiffs are entitled to a new trial on the Second, Third, and Fourth claims because the jury instructions misstated the law and the district court erred in excluding evidence and concluding that Defendants lacked authority over the Plan's investment options. ................................. 34

A. The jury's "no breach" findings resulted from prejudicially erroneous legal standards and evidentiary exclusions. ......................... 35

1. The district court instructed the jury to apply an erroneous "could have" standard in determining whether a fiduciary breach occurred. ............................................................. 36

2. The district court erroneously instructed the jury that certain conduct could not establish a breach of fiduciary duty ................ 38

3. The district court erroneously excluded relevant testimony showing a lack of prudence under the circumstances. .................. 43

B. The district court's erroneous conclusion that Defendants lacked authority over the investment options offered to participants prejudiced Plaintiffs' ability to prove Plan losses. ................................. 46

III. Plaintiffs are entitled to a new trial due to prejudice from Defendants' evidence and argument regarding irrelevant matters such as accusations of "lawyer-driven" litigation and Yale University's purported "generosity" in its non-fiduciary role as Plaintiffs' employer. .................................................................. 50

IV. The district court erred in granting summary judgment on Plaintiffs' prohibited transaction claims (Count II, IV, and VI). .............................. 56

Conclusion ........................................................................................... 58

Certificate of Compliance ..................................................................... 60

Certificate of Service ............................................................................ 61

# AUTHORITIES

## Cases

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
　446 F.3d 728 (7th Cir. 2006) ............................................................... 27

*Braden v. Wal-Mart Stores, Inc.*,
　588 F.3d 585 (8th Cir. 2009) ................................................................. 7

*Brotherston v. Putnam Invs., LLC*,
　907 F.3d 17 (1st Cir. 2018)...................................... 19, 20, 22, 25, 54

*Browe v. CTC Corp.*,
　15 F.4th 175 (2d Cir. 2021) ................................................................. 6

*Bussian v. RJR Nabisco, Inc.*,
　223 F.3d 286 (5th Cir. 2000) ............................................................. 22

*Cann v. Ford Motor Co.*,
　658 F.2d 54 (2d Cir. 1981) ................................................................. 29

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*,
　472 U.S. 559 (1985) ........................................................................... 41

*Chao v. Hall Holding Co.*,
　285 F.3d 415 (6th Cir. 2002) ............................................................. 54

*Chao v. Merino*,
　452 F.3d 174 (2d Cir. 2006) ............................................................. 26

*Coan v. Kaufman*,
　457 F.3d 250 (2d Cir. 2006) ............................................................. 55

*Crane v. Consol. Rail Corp.*,
　731 F.2d 1042 (2d Cir. 1984) ........................................................... 34

*Cunningham v. Cornell Univ.*,
　___ F.4th ___,
　2023 U.S. App. LEXIS 30195 (2d Cir. Nov. 14, 2023) ...... 17, 19, 44, 56, 57, 58

*DiFelice v. U.S. Airways, Inc.*,
　497 F.3d 410 (4th Cir. 2007) ...................................................... 35, 44

*Donovan v. Bierwirth*,
　680 F.2d 263 (2d Cir. 1982) ............................................................... 4

*Donovan v. Bierwirth*,
　754 F.2d 1049 (2d Cir. 1985) ............................... 20, 24, 27, 29, 30, 47

*Dubner v. City & Cty. of S.F.*,
266 F.3d 959 (9th Cir. 2001) ............................................................. 48

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) .............................................................. 4, 43, 49

*George v. Kraft Foods Global, Inc.*,
641 F.3d 786 (7th Cir. 2011) ............................................................. 39

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
54 F.4th 115 (2d Cir. 2022) ................................................................ 6

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000) ............................................................................ 6

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993) ............................................................................ 34

*Hughes v. Nw. Univ.*,
595 U.S. 170, 142 S. Ct. 737 (2022) ................................. 5, 8, 26, 38, 43, 46, 49

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) ............................................................. 45

*In re Beck Indus., Inc.*,
605 F.2d 624 (2d Cir. 1979) ............................................................. 24

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ............................................................. 55

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008) ...................................................... 56

*Katsaros v. Cody*,
744 F.2d 270 (2d Cir. 1984) ................................................. 35, 40, 49

*Knight v. Comm'r*,
552 U.S. 181 (2008) .......................................................................... 23

*Lander v. Hartford Life & Annuity Ins. Co.*,
251 F.3d 101 (2d Cir. 2001) ............................................................... 9

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
552 U.S. 248 (2008) ............................................................................ 7

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
323 F.R.D. 145 (S.D.N.Y. 2017), *petition for permission to appeal
denied*, No. 17-3978 (2d Cir. Feb. 13, 2018) ................................... 55

iv

*Leimkuehler v. Am. United Life Ins. Co.*,
   713 F.3d 905 (7th Cir. 2013) ............................................................. 56

*Lore v. City of Syracuse*,
   670 F.3d 127 (2d Cir. 2012) ............................................................... 34

*Marcic v. Reinauer Transp. Cos.*,
   397 F.3d 120 (2d Cir. 2005) ............................................................... 34

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
   No. 15-9936, 2017 U.S. Dist. LEXIS 143208 (S.D.N.Y. Sep. 5, 2017) ........... 56

*N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*,
   18 F.3d 179 (2d Cir. 1994) ............................................................ 6, 58

*Pappas v. Middle Earth Condo. Ass'n*,
   963 F.2d 534 (2d Cir. 1992) ........................................................ 51, 53

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ............................... 4, 25, 26, 32, 36, 56

*Perry v. Ethan Allen, Inc.*,
   115 F.3d 143 (2d Cir. 1997) ............................................................... 18

*Piazza v. EBSCO Indus.*,
   273 F.3d 1341 (11th Cir. 2001) ......................................................... 55

*Process Am., Inc. v. Cynergy Holdings, LLC*,
   839 F.3d 125 (2d Cir. 2016) ........................................................ 35, 48

*Robertson v. Nat'l Basketball Ass'n*,
   556 F.2d 682 (2d Cir. 1977) ............................................................... 55

*Roth v. Sawyer-Cleator Lumber Co.*,
   16 F.3d 915 (8th Cir. 1994) ............................................................... 22

*Sacerdote v. N.Y. Univ.*,
   9 F.4th 95 (2d Cir. 2021) ................................... 19, 20, 29, 30, 31, 32, 37, 38, 39

*Sheng v. M&T Bank Corp.*,
   848 F.3d 78 (2d Cir. 2017) ............................... 17, 28, 34, 37, 43

*Stagl v. Delta Air Lines, Inc.*,
   117 F.3d 76 (2d Cir. 1997) ............................................................... 50

*Stephenson v. Doe*,
   332 F.3d 68 (2d Cir. 2003) ............................................................... 33

*Stollings v. Ryobi Techs., Inc.*,
   725 F.3d 753 (7th Cir. 2013) ............................................................. 53

*Sweda v. Univ. of Pa.*,
   923 F.3d 320 (3d Cir. 2019) ............................................................ 5, 27, 35, 43

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ............................. 22, 24, 26, 27, 30, 32, 33, 44, 50

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ........................................................................... 8

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015) ................................................... 5, 7, 9, 19, 40, 42, 46

*Tibble v. Edison Int'l*,
   843 F.3d 1187 (9th Cir. 2016) ............................................................. 5, 10

*Tompkins v. Metro-N. Commuter R.R. Co.*,
   983 F.3d 74 (2d Cir. 2020) ................................................................. 56

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ...................................................................... 5, 42

*Vellali v. Yale Univ.*,
   ____ F. Supp. 3d ___, 2023 U.S. Dist. LEXIS 45086 (D. Conn. Mar. 17, 2023) ............................................................................................. 12

*Vellali v. Yale Univ.*,
   308 F. Supp. 3d 673 (D. Conn. 2018) ..................................................... 4

*Vellali v. Yale Univ.*,
   333 F.R.D. 10 (D. Conn. 2019) ............................................................ 11

*Vellali v. Yale Univ.*,
   No. 3:16-cv-1345 (AWT), 2022 U.S. Dist. LEXIS 192235 (D. Conn. Oct. 21, 2022) ................................................................................................ 4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................... 55

*White v. Chevron Corp.*,
   No. 16-793, 2016 U.S. Dist. LEXIS 115875 (N.D. Cal. Aug. 29, 2016) ........... 41

**Statutes**

28 U.S.C. § 1291 ......................................................................................... 1

28 U.S.C. § 1331 ......................................................................................... 1

29 U.S.C. § 1001(b) .................................................................................... 25

29 U.S.C. § 1002(21)(A) .............................................................................. 3

29 U.S.C. § 1002(34) ........................................................................... 3, 7

29 U.S.C. § 1102 ................................................................................... 3, 8

29 U.S.C. § 1102(a)(1) ............................................................................. 49

29 U.S.C. § 1104(a)(1) ............................................................................... 3

29 U.S.C. § 1104(a)(1)(B) ................................... 4, 35, 37, 38, 43, 50

29 U.S.C. § 1104(a)(1)(D) ....................................................................... 49

29 U.S.C. § 1106(a)(1) ................................................... 2, 3, 6, 11, 17

29 U.S.C. § 1108(b)(2)(A) .......................................................................... 6

29 U.S.C. § 1109(a) ........................................... 3, 6, 18, 20, 27, 31

29 U.S.C. § 1132(a)(2) ....................................................... 1, 3, 18, 55

29 U.S.C. § 1136(b) ................................................................................. 24

**Rules**

Fed. R. Civ. P. 59(a) ............................................................................... 34

**Other**

DOL Advisory Opinion 2013-03A, 2013 WL 3546834 (July 3, 2013) .................. 6

George T. Bogert et al., *The Law of Trusts & Trustees* (3d ed. 2009) .............. 5, 40

RESTATEMENT (SECOND) OF TRUSTS (1959) ........................................... 21

RESTATEMENT (THIRD) OF TRUSTS .................................................... 5, 19

U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* (Sept. 2019),
    https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-
    activities/resource-center/publications/a-look-at-401k-plan-fees.pdf .................. 9

U.S. Dep't of Labor, *Private Pension Historical Tables and Graphs 1975–
    2018* (Oct. 2022),
    https://www.dol.gov/sites/default/files/ebsa/researchers/statistics/retireme
    nt-bulletins/private-pension-plan-bulletin-historical-tables-and-graphs.pdf ........ 7

Unif. Prudent Investor Act ........................................................................ 5

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 because this action arises under the Employee Retirement Income Security Act of 1974 and is brought under 29 U.S.C. § 1132(a)(2). This Court has jurisdiction under 28 U.S.C. § 1291 over this appeal from the district court's July 13, 2023 Judgment. SA137.[1] Plaintiffs noticed their appeal on July 25, 2023. A200.

---

[1] Citations in the form "SA__" and "A__" are to Appellants' Special Appendix and Appellants' Appendix, respectively.

## STATEMENT OF THE ISSUES

1. Whether Plaintiffs are entitled to a new trial on damages from Defendants' breach of fiduciary duty regarding recordkeeping and administrative fees, where the district court instructed the jury that Defendants could avoid financial liability merely by showing that a prudent fiduciary *could* have made the same decisions, rather than requiring Defendants to prove that a prudent fiduciary *would* have made the same decisions.

2. Whether Plaintiffs are entitled to a new trial on their investment-related claims due to errors in the district court's jury instructions, rulings regarding Defendants' fiduciary authority over investments, and exclusion of evidence.

3. Whether Plaintiffs are otherwise entitled to a new trial due to irrelevant and prejudicial evidence and argument regarding "lawyer-driven" litigation and Yale University's purported "generosity" in its non-fiduciary role as Plaintiffs' employer.

4. Whether the district court erred in granting summary judgment on Plaintiffs' "prohibited transactions" claims under 29 U.S.C. § 1106(a)(1).

## STATEMENT OF THE CASE

### I. Local Rule 28.1(b) information

This is an action for breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiffs-Appellants represent a certified class of over 20,000 current and former employees of Yale University who participate in the Yale University Retirement Account Plan ("Plan"), an ERISA-governed defined-contribution retirement plan that Yale maintains for its employees. *See* 29 U.S.C. § 1002(34). Defendants-Appellees Yale University, Michael A. Peel, and the Retirement Plan Fiduciary Committee are the Plan's fiduciaries as defined by ERISA. *See* 29 U.S.C. §§ 1002(21)(A), 1102.

Plaintiffs commenced this action on August 9, 2016 (Doc. 1)[2] and filed the operative amended complaint on December 9, 2016 (A55). Proceeding in a representative capacity on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs assert that Defendants violated their ERISA-imposed fiduciary obligations by incurring unreasonable plan expenses and failing to eliminate certain imprudent investment options, resulting in millions of dollars in losses to the Plan and participants' retirement savings. *See* 29 U.S.C. §§ 1104(a)(1), 1106(a)(1). Plaintiffs seek recovery of all Plan losses resulting from the alleged ERISA violations and appropriate equitable relief. *See* 29 U.S.C. § 1109(a).

---

[2] "Doc." refers to the district court ECF document number.

3

The district court, Hon. Alvin W. Thompson, disposed of certain claims pursuant to Rule 12(b)(6) and Rule 56. SA1, *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673 (D. Conn. 2018); SA41, *Vellali v. Yale Univ.*, No. 3:16-cv-1345 (AWT), 2022 U.S. Dist. LEXIS 192235 (D. Conn. Oct. 21, 2022). On June 28, 2023, a jury rendered a verdict for Defendants on the remaining claims. SA121.

The district court entered judgment on July 13, 2023. SA137. Plaintiffs filed their notice of appeal on July 25, 2023. A200. Defendants conditionally cross-appealed. Doc. 630.

## II. Statutory background

"ERISA's central purpose is to protect beneficiaries of employee benefits plans." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 715 (2d Cir. 2013) ("*PBGC*"). It does so by imposing upon plan fiduciaries "strict standards of trustee conduct … derived from the common law of trusts," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014), duties that are the "highest known to the law," *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982). The statute requires fiduciaries to discharge their plan-related duties "solely in the interest of the participants" and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B), SA210.

Given ERISA's trust-law origins, ERISA's fiduciary duties generally track common-law trust duties except when "the language of the statute, its structure, or its purposes require departing from common-law trust requirements." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996). Thus, ERISA's duty of prudence incorporates "a continuing duty to monitor investments and remove imprudent ones under trust law." *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015). This requires a fiduciary to conduct an "independent evaluation to determine which investments may be prudently included" in a plan, *Hughes v. Nw. Univ.*, 595 U.S. 170, 142 S. Ct. 737, 741–42 (2022), to "'systematically consider *all the investments* of the trust at regular intervals,'" and to promptly remove any imprudent investments, *Tibble*, 575 U.S. at 529–30 (quoting Bogert, *Law of Trusts & Trustees* § 684 (3d ed. 2009)) (emphasis added; cleaned up).

Another fundamental aspect of ERISA's duty of prudence, as informed by the law of trusts, is "cost-conscious management." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197–98 (9th Cir. 2016) (*en banc*) (quoting RESTATEMENT (THIRD) OF TRUSTS § 90, cmt. b). Put simply, "[w]asting beneficiaries' money is imprudent." *Id.* at 1198 (quoting Unif. Prudent Investor Act § 7). Therefore, plan fiduciaries "are obliged to minimize costs," *id.*, and must "understand and monitor plan expenses" such as fees paid to service providers, *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328–29 (3d Cir. 2019) (quoting DOL Advisory Opinion 2013-03A, 2013 WL

5

3546834, at *4 (July 3, 2013)).

Congress supplemented the general fiduciary duties by categorically prohibiting certain transactions. *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000); *see* 29 U.S.C. § 1106(a)(1), SA215. On its face, § 1106(a) would broadly prohibit "most transactions involving service providers," *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 120 (2d Cir. 2022), but it is subject to certain exemptions, including an exemption for "services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor*,*" 29 U.S.C. § 1108(b)(2)(A), SA216. The plan is "entitled to recover" any excess above a reasonable fee. *N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994).

A fiduciary who breaches an ERISA-imposed duty is "liable to make good to such plan any losses to the plan" caused by the breach and is subject to equitable relief. 29 U.S.C. § 1109(a), SA230. ERISA confers upon plan participants a private right of action to pursue that relief for a plan, which is the same authority granted to the Secretary of Labor and plan fiduciaries. 29 U.S.C. § 1132(a)(2); *see Browe v. CTC Corp.*, 15 F.4th 175, 191 n.6 (2d Cir. 2021) (actions under § 1132(a)(2) "are brought in a representative capacity on behalf of the plan"). The Secretary "depends in part on private litigation to ensure compliance with the statute."

6

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009).

### III. Factual background

The Yale University Retirement Account Plan is a "defined contribution" plan, meaning "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble*, 575 U.S. at 525; *see* 29 U.S.C. § 1002(34). Such plans "dominate the retirement plan scene today." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008). As of 2020, 110 million Americans had collectively invested $8.4 trillion in ERISA-governed defined-contribution plans.[3] With $3.8 billion in assets at the time of suit, the Yale Plan is in the largest 0.02% of all defined contribution plans in the United States. A55, A61 (Am. Compl. ¶¶ 3, 12). In the competitive market for defined-contribution plan services, large plans like Yale's have tremendous bargaining power to obtain high-quality services at favorable pricing. A55 (¶ 3); A558–A559 (2413:17–2414:9).

The Plan's governing document designates Yale University, acting through its Vice President for Human Resources and Administration (Defendant Peel at the

---

[3] U.S. Dep't of Labor, *Private Pension Historical Tables and Graphs 1975–2020*, Tables E1, E4, E10 (Oct. 2022), https://www.dol.gov/sites/default/files/ebsa/researchers/statistics/retirement-bulletins/private-pension-plan-bulletin-historical-tables-and-graphs.pdf.

time of suit), as the Plan's "named fiduciary" with authority over the Plan's operation and administration. *See* 29 U.S.C. § 1102; Doc. 281-52 at 53 (Art. 12.1–12.2). Defendant Peel established the Defendant Retirement Plan Fiduciary Committee in 2012 to oversee the Plan on a day-to-day basis. SA49; Doc. 281-52 at 54–55 (Art. 12.4). Until then, from 2007 through 2012, Yale University and Peel relied on a single employee, Hugh Penney, to monitor the Plan's fees and investments. SA49. Because Plaintiffs' claims apply to all Defendants as a group acting on behalf of Yale University, Plaintiffs refer to them collectively as "Defendants" unless otherwise indicated.

Each participant in the Plan "chooses how to invest her funds, subject to an important limitation: She may choose only from the menu of options selected by the plan administrators," *i.e.*, Defendants. *Hughes*, 142 S. Ct. at 740; SA43; A67–A68 (¶ 34). Defendants also were responsible for hiring service providers, such as a recordkeeper to track participants' account balances. *See Hughes*, 142 S. Ct. at 740; SA43; A67–A68 (¶ 34).

Defendants' decisions on these matters can dramatically affect participants' retirement savings. SA43–SA44. Because participants' benefits are "tied to the value of their accounts, . . . the benefits can turn on the plan fiduciaries' particular investment decisions." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020). In contrast to a traditional "defined-benefit" pension plan in which participants

8

receive a fixed monthly payment for life regardless of the plan's performance, "every penny of gain or loss" in a defined-contribution plan is at the participants' risk. *Id.* at 1619–20. Thus, underperforming investments and excessive fees for plan services can "significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 575 U.S. at 525.[4]

During the class period, the Plan included over 100 investment options, all of which were managed by the Plan's recordkeepers, TIAA and Vanguard.[5] SA92; A105 (¶ 105). Except for TIAA's Traditional Annuity (a fixed annuity contract), the Plan's investment options are mutual funds and variable annuities. SA43; A105–A106 (¶¶ 105–110). Variable annuities are insurance products, but their returns depend on the underlying mutual funds in which they invest. *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 105–06 (2d Cir. 2001).

Defendants retained both TIAA and Vanguard as recordkeepers until 2015. SA46; A104 (¶ 103). TIAA and Vanguard received compensation for recordkeeping through asset-based revenue sharing payments from the expenses charged by their proprietary funds in the Plan. SA46–SA48; A202; A614 (24:2–

---

[4] U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* 2 (Sept. 2019) (finding that 1% difference in fees and expenses over 35 years reduces participant's account balance at retirement by 28%), https://www.dol.gov/sites/default/files/ebsa/about-ebsa/our-activities/resource-center/publications/a-look-at-401k-plan-fees.pdf.

[5] "TIAA" refers to Teachers Insurance and Annuity Association of America-College Retirement Equities Fund. A103–A104 (¶ 102 & n.29). "Vanguard" refers to Vanguard Group, Inc. *Id.*

20). The fees paid to TIAA and Vanguard directly reduced Plan participants' account balances. SA43–SA44; *see Tibble*, 843 F.3d at 1198 ("It is beyond dispute that the higher the fees charged to a beneficiary, the more the beneficiary's investment shrinks.").

In the operative amended complaint, Plaintiffs contend that Defendants failed to control the Plan's fees and eliminate imprudent investments, resulting in millions of dollars in losses to the Plan and participants' retirement savings. A56–A60, A104 (¶¶ 3–5, 8, 103). Plaintiffs allege in seven counts that Defendants breached their fiduciary duties and caused prohibited transactions by: locking the plans into an imprudent investment and recordkeeping arrangement with TIAA (Counts I and II); causing the Plan to pay unreasonable administrative fees to TIAA and Vanguard (Counts III and IV); causing the Plan to incur unreasonable investment-related expenses and performance losses (Counts V and VI); and failing to properly monitor co-fiduciaries (Count VII). A168–A185 (¶¶ 207–64).

## IV.   Proceedings below

### A.     Pre-trial rulings

On March 30, 2018, the district court granted in part and denied in part Defendants' motion to dismiss Plaintiffs' amended complaint. SA1–SA40. The court dismissed claims that Defendants breached ERISA's duty of loyalty and a portion of the imprudence claim in Count V. SA40. The court otherwise denied the

10

motion. *Id*. Plaintiffs stated plausible claims that Defendants breached ERISA's duty of prudence by "locking" the Plan into a bundled service arrangement without regard to ongoing reasonableness (Count I), allowing the Plan to pay unreasonable recordkeeping and administrative fees (Count III), retaining unreasonably expensive and underperforming investment options (Count V), and failing to monitor co-fiduciaries (Count VII). SA17–SA24, SA26–SA27, SA35–SA38. Plaintiffs also plausibly alleged that Defendants caused the Plan to engage in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1). SA30–SA35.

On September 24, 2019, the district court certified a class of all Plan participants and their beneficiaries from August 9, 2010 through the date of judgment with respect to the remaining claims. Doc. 202; *Vellali v. Yale Univ.*, 333 F.R.D. 10, 18 (D. Conn. 2019).

After the close of discovery, Defendants moved for summary judgment on all remaining claims and to exclude the testimony of Plaintiffs' expert witnesses. Docs. 267, 272, 275, 278. On March 30, 2022, the district court denied the motions to exclude expert testimony. Docs. 408–410. On October 21, 2022, the district court granted in part and denied in part Defendants' motion for summary judgment. SA41–SA111. The court granted summary judgment with respect to Plaintiffs' prohibited transaction claims (Counts II, IV, and VI) due to a lack of evidence that Defendants "engaged in self-dealing or other disloyal conduct."

11

SA108–SA109. The court also granted summary judgment on the duty to monitor claim (Count VII), but otherwise denied the motion. SA110–SA111.

On March 17, 2023, the district court denied Defendants' motion to strike Plaintiffs' jury demand. Doc. 439; *Vellali v. Yale Univ.*, ___ F. Supp. 3d ___, 2023 U.S. Dist. LEXIS 45086 (D. Conn. Mar. 17, 2023). The court later denied Defendants' motion to certify an interlocutory appeal. Doc. 450.[6]

### B.    Trial decision

A four-week jury trial commenced on May 31, 2023. A42, Doc. 542. Plaintiffs pursued four claims for breach of the duty of prudence, asserting that Defendants:

> (1) allowed unreasonable recordkeeping and administrative fees to be charged to participants in the Plan ("First Claim");
>
> (2) failed to appropriately monitor investment options offered to participants in the Plan ("Second Claim");
>
> (3) failed to select appropriate share classes for investment options in the Plan ("Third Claim"); and
>
> (4) imprudently agreed to TIAA's requirement that a plan offering the TIAA Traditional Annuity must also offer the CREF Stock Account ("Fourth Claim").

SA188–SA189 (3669:1–3670:6). On June 28, 2023, the jury entered a verdict for Defendants on each of these claims. SA121–SA127.

Regarding the First Claim based on recordkeeping and administrative fees, Plaintiffs presented evidence that Defendants' failure to take reasonable steps to

---

[6] Defendants' conditional cross-appeal raises the jury trial issue. Doc. 630.

monitor and control the asset-based revenue sharing paid to TIAA and Vanguard fell short of the prevailing fiduciary standard, resulting in Plan losses exceeding $41.5 million. *E.g.*, A558–A562 (2413:17–2417:24), A566 (2454:8–12). The jury found that Defendants breached the duty of prudence and that the breach resulted in a loss to the Plan. SA121–SA122. However, the jury awarded no damages. The district court's instructions and verdict form allowed Defendants to avoid liability based on the mere *possibility* that a hypothetical prudent fiduciary "*could* have" made the same decisions. SA122; SA196–SA197 (3677:24–3678:2) (emphasis added). The court rejected Plaintiffs' proposed instruction, which would have required Defendants to show that a hypothetical prudent fiduciary "would have" made the same decisions. A195–A197; SA161–SA163 (3576:2–3578:12); A598 (3600:6–25) (Plaintiffs proposing "would have" for special interrogatory in Part II.A and Defendants requesting change from "would" to "could").

On the Second, Third, and Fourth Claims, related to Plan investments, the jury found no breach of fiduciary duty and thus did not reach questions of loss or damages. SA123–SA127. The court's instructions on the breach element incorporated the same "could have" standard noted above. SA196–SA197 (3677:24–3678:2). The court further instructed the jury, over Plaintiffs' objection, that certain of Defendants' conduct could not constitute a fiduciary breach as a matter of law. SA192–SA195 (3673:14–3676:11).

Also relevant to the investment claims, the district court granted a motion *in limine* which precluded Plaintiffs from pursuing a theory that Defendants had the power to remove "legacy" TIAA annuities from the Plan's investment lineup and to "map" (or transfer) the assets invested in the TIAA annuities to other Plan options without the participants' consent. SA112–SA114; SA115–SA120. The court then granted Defendants' motion—filed in the middle of the night, only hours before the witness took the stand—to exclude certain investment damages calculations of Plaintiffs' expert, Dr. Gerald Buetow, due to a lack of evidence quantifying how many participants would have voluntarily exited the TIAA annuities. SA128–SA136. Those rulings effectively negated Plaintiffs' ability to request any specific damages amount related to the TIAA annuities.

During the trial, the court allowed Defendants, over Plaintiffs' objections, to repeatedly extol the purported "generosity" of Yale University's contributions to the Plan—a non-fiduciary function—and refused Plaintiffs' request for a limiting instruction. *E.g.*, A336–A337 (49:11–24, 61:10–24); SA144 (1225:11–23), SA146–SA150 (1231:5–1232:19, 1481:21–1483:21); SA157–SA159 (3111:18–3113:16). And the court allowed Defendants to make repeated comments and arguments to the effect that the litigation was "lawyer-driven" and that participants were unable to opt out of the class, thereby inviting the jury to decide the case based on matters unrelated to the merits. A190; A606–A607 (3743:24–3744:25);

14

SA199–SA200 (3736:16–3737:23).

## SUMMARY OF THE ARGUMENT

I. The jury instructions and special interrogatories on the First Claim used the wrong legal standard regarding the extent of loss or damages caused by a breach of fiduciary duty. Although the district court correctly shifted the burden of proof to Defendants, it then diluted that burden by allowing Defendants to avoid liability based on a remote possibility that the same result "*could*" have occurred if Defendants had acted prudently, rather than requiring proof that the same result *would*, in fact, have occurred. The district court's standard is contrary to this Court's precedent, the law of trusts, and the decisions of other courts of appeals to address the issue. And the error was prejudicial, as it caused the jury to award no damages despite finding that Defendants breached their fiduciary duties and caused a loss to the Plan. Accordingly, the Court should vacate the judgment on the First Claim and remand for a new trial on the issue of damages.

II. Plaintiffs are entitled to a new trial on the Second, Third, and Fourth claims due to errors in the district court's jury instructions and evidentiary rulings.

A. The district court used the same erroneous "could have" standard discussed above to instruct the jury on the standard for a breach of fiduciary duty. The court also mistakenly instructed the jury that a laundry list of Defendants' conduct could not establish a breach of fiduciary duty, which was wrong as a

matter of law and created a misleading impression that the jury should disregard much of Plaintiffs' evidence in determining whether a breach occurred.

B. The district court erred in granting a motion *in limine* precluding Plaintiffs from proceeding on a theory that Defendants imprudently failed to eliminate the Plan's TIAA annuities and transfer those assets to other Plan options. The district court's conclusion that certain contracts exempted Defendants from their duty to eliminate imprudent investments is contrary to ERISA's text and Supreme Court precedent. The motion *in limine* ruling precipitated the exclusion of damages opinions of Plaintiffs' expert related to TIAA annuities, by preventing Plaintiffs from presenting the evidence needed to support the opinions. Therefore, if the motion *in limine* ruling is reversed, the exclusion of expert testimony should also be vacated.

III. The prejudice caused by the district court's legal errors was exacerbated by defense counsel's inflammatory comments regarding irrelevant matters, which the district allowed over Plaintiffs' objections. Yale University's purported "generosity" in making contributions to the Plan, in its role as an employer paying agreed-upon compensation to its employees, is completely irrelevant to the question of whether Defendants breached their duties in administering the Plan in their role as ERISA fiduciaries. Any testimony and argument praising Yale's generosity improperly played to the jury's sympathy and created a misleading

impression that Yale was acting charitably. Likewise, defense counsel's commentary to the effect that this was a "lawyer-driven" case, discussion of similar litigation, and misleading suggestion that class members were included in the case against their will, only served to arouse prejudice against Plaintiffs. These irrelevant and inflammatory arguments created an unacceptable risk that the jury's decision was influenced by matters unrelated to the merits, and establish a separate or additional reason to order a retrial.

IV. The district court erred in granting summary judgment on Plaintiffs' prohibited transaction claims due to a lack of evidence that Defendants engaged in "self-dealing or other disloyal conduct." SA108–SA109. A recent opinion of this Court squarely held that ERISA's prohibited transaction provision, § 1106(a)(1), cannot be read to require such a showing. *Cunningham v. Cornell Univ.*, ___ F.4th ___, 2023 U.S. App. LEXIS 30195, at *20 (2d Cir. Nov. 14, 2023). Because that was the sole ground for summary judgment and the record contains no other basis on which to affirm, summary judgment should be reversed, and these claims remanded for trial.

## ARGUMENT

**I.      Plaintiffs are entitled to a new trial on the issue of damages on the First Claim because the jury instructions misstated Defendants' burden.**

**Standard of review:** A claim of error in the district court's jury instructions is reviewed de novo. *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 86 (2d Cir. 2017). "A

jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Id.* (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 153 (2d Cir. 1997)).

The district court used an incorrect legal standard to instruct the jury on Defendants' burden of proof, resulting in an award of no damages despite the jury's finding that Defendants breached their duty of prudence and caused a loss to the Plan. The Court should therefore remand for a new trial on the issue of damages under the correct standard.

### A. The burden under ERISA shifts to the defendant to disprove any portion of potential damages.

Section 1109, entitled "Liability for breach of fiduciary duty," states that any "fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a), SA230. As Plan participants, Plaintiffs brought this action to obtain that relief. A57 (¶ 5); *see* 29 U.S.C. § 1132(a)(2).

The district court interpreted § 1109(a) as requiring Plaintiffs to prove three elements: (1) Defendants were Plan fiduciaries,[7] (2) Defendants breached the duty of prudence, and (3) the Plan suffered a loss. SA189–SA190 (3670:16–3671:23),

---

[7] Because Defendants conceded their fiduciary status, this element was omitted from the verdict form. *See* A600–A601 (3605:21–3606:18).

SA195 (3676:18–25). The court then instructed that Defendants have the burden of proof regarding damages. SA197–SA198 (3678:15–3679:1); *see Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 113 (2d Cir. 2021) ("Although plaintiffs bear the burden of proving a loss, the burden under ERISA shifts to the defendants to disprove any portion of potential damages by showing that the loss was not caused by the breach of fiduciary duty.").

As *Sacerdote* explained, this burden-shifting approach is firmly grounded in the common law of trusts, and thus "aligned with the Supreme Court's instruction to 'look to the law of trusts' for guidance in ERISA cases." *Sacerdote*, 9 F.4th at 113 (quoting *Tibble*, 575 U.S. at 529); *see* RESTATEMENT (THIRD) OF TRUSTS § 100, cmt. f (2012) ("[W]hen a beneficiary has succeeded in proving that the trustee has committed a breach of trust and that a related loss has occurred, the burden shifts to the trustee to prove that the loss would have occurred in the absence of the breach."). The burden-shifting approach has been adopted by most circuits to address the issue. *E.g.*, *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 34–39 (1st Cir. 2018) (joining Fourth, Fifth, and Eighth circuits).[8]

---

[8] Although other circuits have described this approach as shifting the burden on "causation" to the defendant, *e.g., Brotherston*, 907 F.3d at 33, this Court has "generally refrained from doing so because of the confusion such terminology may generate in cases concerning one fiduciary's liability for losses relating to another fiduciary's actions," *Cunningham*, 2023 U.S. App. LEXIS 30195, at *37 n.13. Regardless of terminology, the substantive principle is the same.

While the district court correctly shifted the burden to Defendants, the court's description of the *content* of that burden was flawed, as discussed next.

**B.  To carry their burden, Defendants had to prove that a prudent fiduciary *would* have made the same decisions, not merely *could* have.**

**1.  Determining whether a breach resulted in damages depends on what likely *would* have occurred in the absence of the breach.**

In determining the existence and extent of damages caused by a fiduciary breach, the relevant question is what *would* have happened but for the breach, not merely what *could* have happened. This Court's precedent, the common law of trusts, and decisions of sister circuits all compel this conclusion.

Decisions of this Court analyzing loss and damages under ERISA use "would have" language. In *Sacerdote*, the Court explained that one reason the burden-shifting rule is appropriate is that the fiduciary's "superior access to information" puts it in a better position to provide evidence of "what the fiduciary ***would have done*** had it not breached its duty in selecting investment vehicles." *Sacerdote*, 9 F.4th at 113 (quoting *Brotherston*, 907 F.3d at 38, emphasis added). What the fiduciary *could* have done had it not breached its duty is irrelevant.

The Court used similar language in *Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir. 1985), the seminal case regarding losses from an ERISA fiduciary's breach. To determine whether a plan "suffered a 'loss' within the meaning of ERISA section 409(a), 29 U.S.C. § 1109(a)," the Court "look[ed] to principles developed

20

under the common law of trusts, which in large measure remain applicable under ERISA." *Id*. at 1051, 1055. An "appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they ***would have*** occupied but for the breach of trust." *Id*. at 1056 (emphasis added, citing RESTATEMENT (SECOND) OF TRUSTS § 205(c) (1959)). Thus, the Court held that:

> the measure of loss applicable under ERISA section 409 requires a comparison of what the Plan actually earned on the [imprudent] investment with what the Plan ***would have*** earned had the funds been available for other Plan purposes. If the latter amount is greater than the former, the loss is the difference between the two; if the former is greater, no loss was sustained.

*Id.* at 1056 (emphasis added).

Because the goal of compensatory damages is to restore the victim to the position that it *would have* occupied had the misconduct not occurred, the question of what *could* have happened but for the breach is simply irrelevant. Allowing a breaching fiduciary to reduce or eliminate its financial liability based on remote and speculative possibilities that *could* have happened is tantamount to awarding $100 million in lost wages to an unemployed personal injury victim with no discernible athletic ability who relied on a speculative theory that, but for the accident, it was theoretically possible that he *could* have become a superstar professional athlete. This Court's precedent and trust law recognize that the proper damages inquiry is what *likely would have* occurred in the absence of the breach, not could have.

21

The fundamental flaw in the "could have" standard is that it simply does not answer the question of whether the defendant's imprudent conduct caused damages—it leaves the question unanswered. Assuming it is possible that the hypothetical prudent fiduciary *could* have made the same ultimate decision, it also remains possible that such a fiduciary *would not* have made the same decision, meaning the breach *did* cause damages. In contrast, determining what likely *would* have happened but for the breach, based on a preponderance of the evidence, provides a conclusive answer as to whether the breach caused damages.

The "would have" standard has been endorsed by other courts of appeals. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 363, 363–65 (4th Cir. 2014); *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 919 (8th Cir. 1994) ("Even if a trustee failed to conduct an investigation before making a decision, he is insulated from liability if a hypothetical prudent fiduciary *would have* made the same decision anyway.") (emphasis added); *Brotherston*, 907 F.3d at 33 (quoting *Roth* with approval); *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 300 (5th Cir. 2000) (same).

In *Tatum*, the Fourth Circuit squarely analyzed this precise issue, rejecting the "could have" standard in favor of the "would have" standard. *Tatum*, 761 F.3d at 363–65. Like the district court here, the *Tatum* district court held that once the plaintiff "made a showing that there was a breach of fiduciary duty and some sort

of loss to the plan," the burden shifted to the defendant to disprove the losses. *Id*. at 361–62. But the court required the defendant "to prove only that 'a hypothetical prudent fiduciary *could* have" made the same decision, rather than "determining whether the evidence established that a prudent fiduciary, more likely than not, would have" made the same decision at the same time and in the same manner as the defendant. *Id*. at 364. Therefore, the court entered judgment for the defendant.

The Fourth Circuit rejected the "could have" standard. *Id*. at 363–65. To carry its burden of showing that the breach did not cause damages, the defendant had to prove that despite its imprudent decision-making process, "a hypothetical prudent fiduciary *would* have made the same decision anyway." *Id*. at 363 (emphasis by *Tatum*).

> Under this standard, a plaintiff who has proved the defendant-
> fiduciary's procedural imprudence and a prima facie loss
> prevails *unless* the defendant-fiduciary can show, by a preponderance
> of the evidence, that a prudent fiduciary *would have* made the same
> decision. Put another way, a plan fiduciary carries its burden by
> demonstrating that it would have reached the same decision had it
> undertaken a proper investigation.

*Id*. The court reasoned that the proper inquiry is what "would have" occurred in the absence of the breach because "'could' describes what is merely possible, while 'would' describes what is probable." *Id.* at 365 (quoting *Knight v. Comm'r*, 552 U.S. 181, 192 (2008)). Because the district court's use of the wrong standard may have affected the outcome, the Fourth Circuit remanded for further proceedings

23

under the correct standard. *Id.* at 368.

While the "would have" standard is a more difficult burden for the breaching fiduciary, the burden is entirely consistent with ERISA's statutory scheme and protective purposes. *Id.* at 365 ("Courts do not take kindly to arguments by fiduciaries who have breached their obligations that, if they had not done this, everything would have been the same.") (quoting *In re Beck Indus., Inc.*, 605 F.2d 624, 636 (2d Cir. 1979) (Friendly, J.)). Requiring the breaching fiduciary to show what "would have" occurred to avoid liability is consistent with the principle, endorsed by this Court, that "once a breach of trust is established, uncertainties in fixing damages will be resolved against the wrongdoer." *Bierwirth*, 754 F.2d at 1056.

In contrast, the "could have" standard adopted by the district court severely undermines ERISA's protective purposes. As stated by the Fourth Circuit: "We would diminish ERISA's enforcement provision to an empty shell if we permitted a breaching fiduciary to escape liability by showing nothing more than the mere possibility that a prudent fiduciary 'could have' made the same decision." *Tatum*, 761 F.3d at 365. In the view of the Secretary of Labor, who has authority to enforce ERISA, *see* 29 U.S.C. § 1136(b), the "could have" approach would "create[] too low a bar, allowing breaching fiduciaries to avoid financial liability based on even remote possibilities." *Tatum*, 761 F.3d at 365–66 (quoting Amicus

24

Br. of Sec'y of Labor 23).

Indeed, a "could have" standard would largely defeat the purpose of burden shifting. Nominally assigning the burden on damages to the breaching fiduciary is meaningless if the bar is set so low that the defendant can easily meet it based on nothing more than conceivable possibilities. Because allocation of the burden is dispositive only in cases of "evidentiary equipoise," *Brotherston*, 907 F.3d at 38–39, the practical effect of a "could have" standard is to put the burden on the plaintiff—the victim of the fiduciary breach—to prove not only that the defendant breached its duty and caused a loss to the plan, but that the ultimate decision is one that *no* prudent fiduciary could have made. Such a rule would make it nearly impossible for plan participants to recover for a fiduciary breach, undermining ERISA's explicit objectives of establishing meaningful "standards of conduct" and "appropriate *remedies*" for fiduciary violations. 29 U.S.C. § 1001(b) (emphasis added); *PBGC*, 712 F.3d at 715 ("ERISA's central purpose is to protect beneficiaries").

**2.** **The discretion afforded to a fiduciary who has *complied* with its statutory duties does not justify a lenient loss standard for one who has *violated* its duties.**

In *Hughes*, the Supreme Court noted in the context of a motion to dismiss that "[a]t times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a

fiduciary may make based on her experience and expertise." *Hughes*, 142 S. Ct. at 742. This Court has similarly noted that "so long as the 'prudent person' standard is met, ERISA does not impose a 'duty to take any particular course of action if another approach seems preferable.'" *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (citation omitted).

Defendants may use selective, out-of-context portions of these quotes to argue that because there is a range of reasonable outcomes available to an ERISA-compliant fiduciary, the proper causation standard is one that asks whether the ultimate decision is one that the defendant reasonably "could have" made had it not breached its duties. That was the reasoning of the *Tatum* district court, and the Fourth Circuit properly rejected it. *Tatum*, 761 F.3d at 355, 364, 369–70.

Critically, the language in *Hughes* and *Merino* regarding the range of reasonable judgments is based on the premise that the fiduciary did *not* breach its duties. The courts were discussing the latitude afforded to a fiduciary who has "met" the prudent person standard, *Merino*, 452 F.3d at 182, by appropriately applying "her experience and expertise" to the matter at hand, *Hughes*, 142 S. Ct. at 742. So long as that is the case, courts will not second-guess the choice among reasonable alternatives merely because a different option turned out better in hindsight. *See PBGC*, 712 F.3d at 716 (prudence standard "focus[es] on a fiduciary's conduct," not results viewed in hindsight). But once a fiduciary has

26

been found to have breached its duties under ERISA—like Defendants here on the First Claim—the fiduciary receives no deference. *See Sweda*, 923 F.3d at 333 (3d Cir. 2019) ("Fiduciary discretion must be exercised within the statutory parameters of prudence and loyalty."); *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 733 (7th Cir. 2006) ("[A] discretionary judgment cannot be upheld when discretion has not been exercised.").

In short, while "a fiduciary need only adhere to its ERISA duties to avoid liability," ERISA "*requires* that" a fiduciary who has violated its duties "be held monetarily liable for the Plan's loss." *Tatum*, 761 F.3d at 369 (citing 29 U.S.C. § 1109(a)). Allowing a breaching fiduciary to avoid financial responsibility for plan losses on a theory that the result *could* have been the same had it not breached its duties would invert the principle that "uncertainties in fixing damages will be resolved against the wrongdoer." *Bierwirth*, 754 F.2d at 1056.

## C. The district court's erroneous and confusing instructions prejudiced Plaintiffs, warranting a new trial on the question of damages.

### 1. The instructions and verdict form included an erroneous "could have" standard.

The verdict form stated that Defendants' burden was merely to show "that a fiduciary following a prudent process *could have* made the same decisions as to recordkeeping and administrative fees." SA122. The jury charge similarly stated that "[e]ven if a fiduciary failed to follow a prudent process in arriving at a

27

decision, the fiduciary may not be found liable if a prudent fiduciary *could have* made the same decision anyway." SA196–SA197 (3677:24–3678:2). Because Defendants' burden was to show that a prudent fiduciary *would* have made the same decisions, the instructions and verdict form contained an incorrect legal standard and did not adequately or accurately inform the jury on the law. *Sheng*, 848 F.3d at 86.

Compounding the error, this portion of the charge is included in the instructions on the third element, loss, rather than damages. SA195 (3676:18) (start of loss instructions); SA197 (3678:15) (start of damages instructions). Because the district court had instructed the jury that Plaintiffs had the burden of proof on loss, SA195 (3676:18–22), including this instruction in the loss section implied that it was Plaintiffs' burden to rule out the possibility that a prudent fiduciary "could have" made the same decision. More confusing still, even though this erroneous instruction appeared in the "loss" section, it characterizes the issue as pertaining to *breach*. SA197 (3678:2–6) ("Put another way, a fiduciary that does not conduct an adequate investigation *breaches the duty of prudence* only if an adequate investigation would compel the fiduciary to conclude that another course of action was required.") (emphasis added).

> ## 2. The verdict form did not accurately implement the burden-shifting framework.

The erroneous "could have" instruction alone constitutes prejudicial error

warranting a new trial. *See infra*, Part I.C.3, pp. 32–34. In addition, the verdict form was generally confusing and did not adequately instruct the jury in assessing loss and damages, creating "an unfair obstacle to the jury's returning an answer favorable to the plaintiffs." *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir. 1981).

As noted, once Plaintiffs established a breach and the fact of loss relative to a prudent alternative, "the burden under ERISA shifts to the defendants to disprove any portion of potential damages by showing that the loss was not caused by the breach of fiduciary duty." *Sacerdote*, 9 F.4th at 113. If several alternative damages measures are "equally plausible, the court should presume that the funds would have been used in the most profitable of these." *Bierwirth*, 754 F.2d at 1056. "The burden of proving that the funds would have earned less than that amount is on the fiduciaries found to be in breach of their duty. Any doubt or ambiguity should be resolved against them." *Id*.

Accordingly, once Plaintiffs identified a prudent alternative against which the Plan suffered a loss, Defendants could meet their burden in one of two ways. First, if Defendants proved by a preponderance of the evidence that despite their imprudent decision-making process, a prudent fiduciary nevertheless would have made the same decisions "at the time and in the manner" Defendants did, then Defendants would have proved that the Plan suffered no loss, because the result

29

would have been the same if Defendants had followed a prudent process. *Tatum*, 761 F.3d at 363–64, 368. Alternatively, Defendants could have rebutted a portion of the potential damages by showing that a different alternative loss measure was more "plausible" than Plaintiffs' model. *See Bierwirth*, 754 F.2d at 1056.

For example, suppose Plaintiffs "proved that it was imprudent to pay $100" per participant per year for the Plan's recordkeeping services, and that a prudent alternative to the Plan's dual-recordkeeper, asset-based fee model was to consolidate to a single recordkeeper by 2010 and to negotiate a rate of $10 per participant. *See Sacerdote*, 9 F.4th at 113. Defendants could then attempt to disprove *any* loss by showing that they would have maintained the same arrangements even if they had prudently investigated the alternatives. Or they could seek to disprove a portion of the losses by arguing that the alternatives endorsed by Plaintiffs would have been more plausibly implemented in 2012 instead of 2010 or that a rate of $50 per participant was more plausible at the time.

The verdict form sought to address these issues in Parts I.B and I.C and the special interrogatories in Part II, but the form was unnecessarily complex. Having two separate lines for the jury to enter a dollar figure was inherently confusing, and the verdict form did not adequately instruct the jury as to how each should be treated. SA122. Part I.B did not instruct the jury, for instance, that the line should be used to enter the amount that Plaintiffs had proven without considering

30

Defendants' contrary evidence. And if that was not the jury's intended task in Part I.B, and the court instead contemplated that the jury should weigh both sides' damages evidence to arrive at a single figure, then having two separate damages lines was improper and only invited confusion and potential inconsistencies.

Further muddying the waters, the line in Part I.B for the jury to enter a dollar figure used the term "loss," while the line in Part I.C used the phrase "amount of damages," making it unclear if the subject matter was the same. SA122. The singular "loss" is best understood as referring to the *fact* of whether "*a* loss" occurred. *See Sacerdote*, 9 F.4th at 112 ("The question of how much money should be awarded to the plaintiffs in damages is distinct from, and subsequent to, whether they have shown a loss."). But because a fiduciary's liability under § 1109(a) is for "loss*es*," after the finding in Part I.B that Plaintiffs had proved "a loss," the next line should have instructed the jury to state "the *amount* of *losses*" (or damages) proved by the Plaintiffs, mirroring the language in Part I.C. Using different terminology may have caused needless confusion.

The form also entailed unnecessary duplication. Part I.C and the two special interrogatories in Part II all dealt with the same subject: Defendants' burden regarding damages.[9] Indeed, Part II.A and II.B are asking essentially the same

---

[9] Part II.B also partially duplicated Part I.A by asking the jury a second time whether Plaintiffs had "proven that the defendants failed to follow a prudent process," SA122, which the district court had instructed was the test for a breach of

31

question, albeit based on an erroneous "could have" standard. *See Tatum*, 761 F.3d at 366 ("[A] fiduciary who fails to 'investigate and evaluate beforehand' will not be found to have caused a loss if the fiduciary would have made the same decision if he had 'investigat[ed] and evaluat[ed] beforehand.'"). A straightforward verdict form based on *Sacerdote* and *Bierwirth* would simply ask, first, whether Defendants had proven that no loss resulted from their imprudent process because a fiduciary using a prudent process would have made the same decision (in which case Defendants would be entitled to judgment), and, if not, the amount of any "portion" of the damages that Defendants had disproven. *Sacerdote*, 9 F.4th at 113.

### 3. The erroneous instructions and verdict form were prejudicial.

These errors prejudiced Plaintiffs. The jury found that Plaintiffs had met their burden on the contested elements of breach and loss on the First Claim. SA121–SA122. The jury found "that the defendants breached their duty of prudence by allowing unreasonable recordkeeping and administrative fees to be charged to participants in the Plan." SA121. The jury also found that "defendants' breach of fiduciary duty resulted in a loss to the Plan." SA122. Yet despite Plaintiffs' evidence that the Plan's losses exceeded $41.5 million, A566 (2454:8–12), the jury

the duty of prudence under Part I.A, SA194 (3675:12–13); *see PBGC*, 712 F.3d at 716, 718 (imprudence turns on whether the fiduciary's "process was flawed"). In that regard, the "Not Applicable" option in Part II.B made no sense, because Part I.A instructed the jury to skip Part II entirely if it found no breach. SA121.

awarded zero damages, SA122. Thus, it is apparent that instructing the jury that Defendants may not be held liable if a prudent fiduciary *could* have made the same decisions affected the damages award.

There is a seeming inconsistency in Part I.B between the jury's finding that Plaintiffs proved "that the defendants' breach of fiduciary duty resulted in a loss to the Plan" and its finding that "the loss proved by the plaintiffs" was zero. SA122. A jury's "seemingly inconsistent verdicts should be reconciled if possible." *Stephenson v. Doe*, 332 F.3d 68, 78 (2d Cir. 2003). The only way to reconcile the finding that Plaintiffs proved a loss with the finding that the loss was zero is to conclude that the $0 figure was the result of finding that Defendants had met their burden to disprove damages under the erroneous "could have" standard. Because Plaintiffs proved that "a loss" in fact occurred, the loss was necessarily greater than zero. A loss of zero is the absence of loss; not a "loss" at all. Thus, the only explanation that reconciles the inconsistency is that the jury initially found some amount of loss greater than zero, but then wrote in zero upon finding that Defendants had met their burden to prove that their breach did not cause any loss because a prudent fiduciary "could have" made the same decisions.

Given that "the distinction between 'would' and 'could' is both real and legally significant," *Tatum*, 761 F.3d at 365, the error likely affected the outcome. Had the district court used the correct legal standard by requiring Defendants to prove that

33

a fiduciary who acted prudently "would have" made the same decisions at the same time and in the same manner as Defendants, the jury may well have concluded that Defendants had failed to carry their burden and awarded the damages shown by Plaintiffs' evidence. Accordingly, the Court should vacate the judgment on the First Claim and remand for a new trial on the issue of damages. *Id.* at 368 (reversal required when "the incorrect legal standard may have influenced" the outcome) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see* Fed. R. Civ. P. 59(a) (court may limit new trial to certain issues); *Crane v. Consol. Rail Corp.*, 731 F.2d 1042, 1050 (2d Cir. 1984) (when special interrogatories were used, "error with respect to one issue will ordinarily not constitute reason to retry an issue that was separately determined").

## II.  Plaintiffs are entitled to a new trial on the Second, Third, and Fourth claims because the jury instructions misstated the law and the district court erred in excluding evidence and concluding that Defendants lacked authority over the Plan's investment options.

**Standards of review:** Claims of instructional error are reviewed de novo. *Sheng*, 848 F.3d at 86. A new trial is warranted when "the instructions, read as a whole," did not "present[] the issues to the jury in a fair and evenhanded manner." *Id.* (quoting *Lore v. City of Syracuse*, 670 F.3d 127, 156 (2d Cir. 2012)). Although evidentiary rulings are generally reviewed for abuse of discretion, the interpretation of a contract on which the evidentiary ruling is based is reviewed de novo. *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005). A

34

motion *in limine* decision that is akin to a dispositive motion ruling is reviewed de novo. *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 & n.3 (2d Cir. 2016).

Here, the instructions misstated the law and failed to present the issues in a fair and evenhanded manner, and other erroneous rulings prejudiced Plaintiffs' ability to prove a breach and related losses on each claim.

## A.   The jury's "no breach" findings resulted from prejudicially erroneous legal standards and evidentiary exclusions.

ERISA's duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B), SA210. By referring to one "*familiar* with such matters," the statute imposes the standard of a prudent expert. *Katsaros v. Cody*, 744 F.2d 270*,* 279 (2d Cir. 1984) ("A trustee's lack of familiarity with investments is no excuse") (emphasis added). Thus, ERISA demands "more than good intentions. '[A] pure heart and an empty head are not enough.'" *Sweda*, 923 F.3d at 329 (quoting *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 (4th Cir. 2007)).

As to each of the Second, Third, and Fourth claims, the jury found that Plaintiffs had not proven a breach of the duty of prudence by a preponderance of the evidence. SA123–SA126. The jury's findings were affected by three

35

prejudicial errors: (1) instructing the jury that a fiduciary who fails to adequately investigate investment options does *not* commit a breach of fiduciary duty if a prudent fiduciary "could have" made the same decision, (2) instructing the jury that Plaintiffs' evidence could not prove a breach of fiduciary duty as a matter of law, and (3) excluding relevant evidence showing that Defendants failed to use the level of "care, skill, prudence, and diligence" that a prudent fiduciary would have used under the circumstances.

**1.  The district court instructed the jury to apply an erroneous "could have" standard in determining whether a fiduciary breach occurred.**

The same "could have" standard that tainted the verdict on the First Claim also infected the breach of fiduciary duty standard on Plaintiffs' investment claims. The jury charge stated that:

> Even if a fiduciary failed to follow a prudent process in arriving at a decision, the fiduciary may not be found liable if a prudent fiduciary *could have* made the same decision anyway. Put another way, a fiduciary that does not conduct an adequate investigation *breaches the duty of prudence* only if an adequate investigation would compel the fiduciary to conclude that another course of action was required.

SA196–SA197 (3677:24–3678:6) (emphasis added).

That clearly misstated the law. The duty of prudence is a test of the "fiduciary's *conduct* in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the *appropriate methods to investigate* and determine the merits of a particular investment." *PBGC*, 712 F.3d at 716 (emphasis

36

added).

An inadequate investigation is a textbook breach of fiduciary duty. It amounts to a failure to use the level of "care, skill, prudence, and diligence" required by the circumstances, and thus breaches the prudent person standard. *See* 29 U.S.C. § 1104(a)(1)(B). Whether an adequate investigation would have compelled a different course of action is a question of loss or damages. *See Sacerdote*, 9 F.4th at 113 (describing "what the fiduciary would have done had it not breached its duty" as an issue of damages). By instructing the jury that there was no breach if a prudent fiduciary could have made the same decision, the district court misled the jury as to the correct legal standard. *Sheng*, 848 F.3d at 86.

This error alone is enough to warrant a new trial. The jury's only findings with respect to the Second, Third, and Fourth claims were that Plaintiffs had not proven a breach of the duty of prudence. SA123, SA125, SA126. But for the erroneous instruction that there was no "breach[] [of] the duty of prudence" if a proper investigation "could" have produced the same decision, the jury might well have found that Plaintiffs proved a breach due to Defendants' failure to conduct an adequate investigation.[10]

---

[10] *See, e.g.*, A431 (495:4–10) (Penney was the only one "involved with analyzing . . . performance and benchmarking during the pre-committee period"); A227 (acknowledging need for "a more robust Oversight Committee with fiduciary responsibility for the investment lineup and plan administration"); A229 (Penney stating: "Come on now, this is higher ed. We're still talking about how to go

**2.      The district court erroneously instructed the jury that certain conduct could not establish a breach of fiduciary duty.**

"Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, § 1104(a)(1)(B), the appropriate inquiry will necessarily be context specific." *Hughes*, 142 S. Ct. at 742. The focus is on the fiduciary's "process" and use of "appropriate methods." *Sacerdote*, 9 F.4th at 108, 111.

Plaintiffs presented ample evidence that Defendants' process and methods fell short of the fiduciary standards prevailing throughout the class period. From the start of the class period in 2010 until 2012, Yale University and Peel relied on a single employee (Penney) with no investment training to oversee more than 100 investment options holding billions of dollars of employees' retirement savings. *See supra*, p. 37 n.10. Contrary to prudent fiduciary practices, Defendants did not adopt an investment policy statement (IPS), hire an external consultant to assist Penney in monitoring Plan investments, or establish a committee with oversight responsibility and authority to make any needed changes to the investment lineup. *Id*.

_____

about" forming committee and hiring investment consultant); A231 ("[T]he need for more formal and regular oversight is necessary to meet Yale's fiduciary obligation under ERISA."); A232 (discussing risk of falling "so far behind the pack that something goes badly" due to delay in establishing the Retirement Committee); A597 (3086:2–13) (Defendants had no Investment Policy Statement until November 2018).

As to each of these alleged deficiencies, as well as the use of certain types of investment options and a lack of competitive bidding for recordkeeping services, the district court instructed the jury that it "may not find the Defendants liable for breach of the duty of prudence based solely on" that practice. SA193–SA195 (3674:4–3676:11). Plaintiffs objected to these instructions as misstating the law. A191–A195; *see, e.g.*, *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 798–99 (7th Cir. 2011) (reversing summary judgment because a reasonable jury could have credited evidence "that prudent fiduciaries would have solicited competitive bids" and thus concluded "that defendants' failure to solicit bids was imprudent").

To be sure, not every failure to adopt an IPS, for example, amounts to a *per se* breach of fiduciary duty. But it does not follow that the failure to do so *cannot* establish imprudent conduct as a matter of law. *Cf. Sacerdote*, 9 F.4th at 111 ("While the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not, contrary to the dissent's suggestion, suffice in every case to demonstrate prudence."). Whether the lack of an IPS in this case was a fiduciary breach depends on whether it amounted to a failure to use the level of "care, skill, prudence, and diligence" that a prudent fiduciary under the circumstances would have used to monitor $3 billion in employee retirement savings, which was a question of fact for the jury.

Indeed, the lack of an IPS or the like could well be a breach of fiduciary duty.

39

ERISA's duty of prudence incorporates a duty under trust law to "'systematic[ally] conside[r] all the investments of the trust at regular intervals' to ensure that they are appropriate." *Tibble*, 575 U.S. at 529 (quoting Bogert, *Law of Trusts & Trustees* § 684 (3d ed. 2009)). An IPS facilitates a systematic review by establishing formal procedures and defined quantitative and qualitative criteria for evaluating investments at specified intervals, *e.g.*, quarterly. A346–A347 (124:23–125:25); A548–A549 (2234:22–2235:7). A fiduciary *could* perform an adequate periodic review without having the process memorialized in a formal IPS, much like a busy attorney might be able to mentally keep track of appointments and court deadlines without writing them in a calendar. But it is also quite plausible that the lack of an IPS could cause the investment monitoring process to suffer despite the fiduciary's good intentions, much like an attorney could miss a deadline that would have been met by maintaining a written calendar. In such a case, the failure to adopt an IPS would reflect a lack of care relative to a prudent fiduciary under the circumstances, *i.e.*, a fiduciary breach. The district court was wrong to instruct otherwise.

The same reasoning applies to the lack of an external investment consultant or a formal committee. Indeed, it is well established that a fiduciary who lacks the necessary expertise has a duty "to seek outside assistance," which an investment consultant would provide. *Katsaros*, 744 F.2d at 279. And while an individual

40

fiduciary in theory *could* adequately monitor over 100 investment options without having a formal committee in place, it is also entirely plausible, if not likely, that the lack of a formalized committee structure with defined responsibilities, monitoring procedures, and authority to make changes to plan investments would produce monitoring deficiencies that the use of a committee would have prevented. Failing to deploy the resources needed to adequately monitor an "enterprise" with the "character" of a multi-billion-dollar retirement plan with over 100 investment options is imprudent. 29 U.S.C. § 1104(a)(1)(B), SA210.

The district court apparently accepted Defendants' position that these instructions were appropriate because ERISA does not contain any *explicit* requirement that fiduciaries must use an IPS, a committee, or a consultant. *See, e.g.*, *White v. Chevron Corp.*, No. 16-793, 2016 U.S. Dist. LEXIS 115875, at *45 (N.D. Cal. Aug. 29, 2016) ("[N]othing in ERISA compels periodic competitive bidding."). That reasoning misunderstands the duty of prudence, which is a general duty to use the care of a prudent fiduciary under the circumstances, not a checklist of specified actions. *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility"). If this general "fiduciary duty applied to nothing more than

activities already controlled by other specific legal duties, it would serve no purpose." *Varity*, 516 U.S. at 504. Indeed, nothing in ERISA explicitly compels "monitor[ing] investments and remov[ing] imprudent ones," but it is beyond dispute that the duty of prudence encompasses such a duty (though its "scope" depends on the circumstances). *Tibble*, 575 U.S. at 530.

The district court stated that it intended the instructions with "the 'solely' language" to be "curative" based on "things happening after the lawsuit was filed." SA167 (3623:5–9). The district court apparently was concerned that evidence that Defendants hired a consultant in 2017 and adopted an IPS in 2018, after Plaintiffs filed this action in August 2016 alleging Defendants' imprudence, could be an impermissible use of subsequent remedial measures under Federal Rule of Evidence 407. But the district court had already given the jury a limiting instruction based on Rule 407 regarding "subsequent actions by the Defendants." SA183 (3663:11–19). Providing additional instructions that misstated the law by forbidding the jury from finding a breach based on various failures was not a proper means to cure anything.

Even if the instructions with "the 'solely' language" were *technically* not incorrect statements of law (and they are),[11] they nevertheless failed to present the

---

[11] For instance, Defendants may argue that the statement that "ERISA requires fiduciaries to follow a prudent process, whether or not that process is set out in a formal document" is technically accurate, SA193 (3674:11–14), meaning that only

issues "in a fair and evenhanded manner." *Sheng*, 848 F.3d at 86. By repeatedly

singling out key pieces of evidence from Plaintiffs' case and instructing the jury

that it may not find a breach solely based upon such evidence, the court created the

impression that much of Plaintiffs' evidence was not even probative. Exacerbating

the one-sided and unfair nature of the instructions, the district court rejected

Plaintiffs' request for an instruction that prudence is not measured solely by

comparison to other universities' plans, which might have somewhat evened the

playing field. A195; *cf. Dudenhoeffer*, 573 U.S. at 418–19 ("[T]he same standard

of prudence applies to all ERISA fiduciaries."); *Sweda*, 923 F.3d at 333 n.9

("ERISA fiduciaries are held to one standard under § 1104" regardless of industry,

and the standard cannot be adjusted "to accommodate subcategories of sponsors

and fiduciaries" such as universities).

### 3. The district court erroneously excluded relevant testimony showing a lack of prudence under the circumstances.

As noted, the prudence inquiry is necessarily context-specific and "turns on

'the circumstances . . . prevailing' at the time the fiduciary acts." *Hughes*, 142 S.

Ct. at 742; *see* 29 U.S.C. § 1104(a)(1)(B). Thus, "in all cases, evaluating the

prudence of an investment decision requires a *totality-of-the-circumstances*

---

a process defect can be a breach, rather than the failure to have a document. That is
wrong for the reasons discussed—when the monitoring failure would not have
occurred if the fiduciary had the benefit of an IPS for guidance, then the failure to
have the IPS itself constitutes an imprudent lack of care. *See supra*, pp. 39–40.

inquiry." *Tatum*, 761 F.3d at 360 (citing *DiFelice*, 497 F.3d at 420) (emphasis added). Indeed, the district court instructed the jury that it should make its decision "*based on all* the facts and circumstances." SA193 (3674:18–19) (emphasis added).

The district court, however, prevented the jury from considering all relevant circumstances. When Plaintiffs sought to elicit testimony from their expert as to whether an investment lineup of over 100 funds is indicative of a prudent fiduciary process, the district court sustained Defendants' objection on the ground that "the number of investments is not an issue in the case." SA139–SA140 (292:17–293:4). The district court evidently precluded this testimony because it had dismissed the portion of Count V alleging that Defendants offered "too many investment options." *See* SA24–SA25. But regardless of whether the "number of funds" was directly at issue as a separate *claim*, the overall structure of the Plan's investment lineup and the process used to assemble and maintain it were unquestionably among the relevant "facts and circumstances" for the jury to consider in evaluating Plaintiffs' investment-related claims.

The Court's recent decision in *Cunningham* is instructive. The district court there had similarly dismissed under Rule 12(b)(6) a claim that the fiduciaries of Cornell University's defined contribution plans included "too many options" in the investment lineup. *Cunningham*, 2023 U.S. App. LEXIS 30195, at *32–33. The

44

plaintiffs asserted that the dismissal later caused the district court to improperly disregard evidence regarding the number of options to the extent it supported Plaintiffs' other claims of investment-related imprudence. *Id*. at *32. But the Court found no error because "the district court *did not preclude* Plaintiffs from relying on evidence" of the number of plan options. *Id*. at *33 (emphasis added). To the contrary, "the district court extensively discussed the evidence of Defendants' putative deficiencies in monitoring the Plans' options and their retention of numerous investment options in addressing whether Defendants had acted imprudently in not removing various underperforming funds." *Id*.; *see also Hughes v. Nw. Univ.*, 63 F.4th 615, 637 (7th Cir. 2023) (finding "allegations that a fiduciary provided too many funds" did not state a separate claim, but that the plaintiffs could rely on such *evidence* to the extent it supported another claim).

Here, in contrast, the district court excluded testimony regarding the size of a prudent investment lineup, which was relevant to present a complete picture of Defendants' investment-related fiduciary process. The court thereby precluded the jury from considering the totality of the circumstances, as the law required in evaluating the prudence of Defendants' conduct.

* * *

Because these errors affected the jury's findings of "no breach" on the Second, Third, and Fourth claims, the judgment should be vacated and these claims

45

remanded for a new trial.

**B.   The district court's erroneous conclusion that Defendants lacked authority over the investment options offered to participants prejudiced Plaintiffs' ability to prove Plan losses.**

Although the jury did not reach the issues of loss or damages on the Second, Third, and Fourth claims, SA123–SA127, Plaintiffs were precluded from presenting relevant evidence on these issues based on two erroneous rulings that should also be vacated.

As the Supreme Court recently held in a case involving Northwestern University's defined-contribution plan, "fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Hughes*, 142 S. Ct. at 742. Failing "to remove an imprudent investment from the plan" is a fiduciary breach. *Id.*

Plaintiffs' Second and Fourth claims at trial asserted that if Defendants had properly discharged their ongoing duty "to properly monitor investments and remove imprudent ones," *Tibble*, 575 U.S. at 530, Defendants would have eliminated certain TIAA variable annuities from the Plan's investment lineup, such as the CREF Stock Account and TIAA Real Estate Account. Doc. 484 at 6–7; SA188–SA189 (3669:14–3670:3). In accordance with *Bierwirth*, Plaintiffs' expert sought to measure the Plan's resulting losses by assuming that if Defendants had acted prudently by removing a particular TIAA annuity as a Plan option,

46

Defendants would have then transferred (or "mapped") the assets that participants had invested in that option to a comparable, prudent alternative. *See Bierwirth*, 754 F.2d at 1056 (proper loss measure is to compare "what the Plan actually earned on the [imprudent] investment with what the Plan would have earned had the funds been available for other Plan purposes" and "been treated like other funds being invested during the same period in proper transactions").

Shortly before trial, the district court granted a motion *in limine* precluding Plaintiffs from arguing that Defendants were imprudent for not unilaterally transferring assets invested in "legacy" TIAA annuities to other Plan options without participants' consent. SA112–SA114. That ruling led to a subsequent motion to exclude the variable annuity damages opinions of Plaintiffs' expert, Dr. Buetow, on the ground that without evidence quantifying the number of participants that would have voluntarily transferred their annuity investments to other options (which was needed based on the *in limine* order that Defendants could not unilaterally map the assets), Buetow's calculations lacked foundation. Doc. 557 at 4–5, 7. The district court precluded the damages opinions despite having previously denied Defendants' Rule 702 motion. SA128; Doc. 409.

The district court's conclusion regarding Defendants' lack of authority over annuity assets should be reversed, which would allow Plaintiffs to establish the requisite foundation for Buetow's opinions regarding the quantum of assets that

47

would have been transferred to alternative options. Although the ruling was in the context of a motion *in limine*, Defendants' motion and the parties' joint trial memorandum framed the question as a "legal issue" regarding Defendants' "legal authority" over the Plan's assets. Doc. 463 at 2–3; Doc. 484 at 12. And the district court effectively granted judgment to Defendants on the issue as a matter of law. Thus, review is de novo. *See Process Am.*, 839 F.3d at 133 & n.3 (reviewing ruling on motion *in limine* that was framed as a motion for summary judgment de novo); *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001) (reviewing motion *in limine* decision that was "a dispositive ruling akin to a dismissal" de novo).

The district court cited two reasons for its conclusion that Defendants lacked the "unilateral ability to map assets from the legacy versions of the TIAA Traditional annuity to another annuity or investment." SA112–SA113.

First, the court relied on language in the legacy contracts to the effect that the only parties to the contract are TIAA and the participant, and language in the Plan document that such contracts are incorporated into the Plan by reference. SA113; SA116–SA117. But the court cited nothing in the legacy TIAA contracts *prohibiting* "the transfer or mapping of assets by Plan sponsors." SA118.

Even if the legacy contracts contained such a clause, that would not negate Defendants' authority—and duty—to ensure that Plan assets are not imprudently invested. ERISA's duty of prudence entails an ongoing duty to ensure that *no*

48

imprudent investment options are offered to participants. *Hughes*, 142 S. Ct. at 740, 742 (fiduciary has a "duty to monitor all plan investments and remove *any* imprudent ones") (emphasis added). And ERISA "makes clear that the duty of prudence trumps the instructions of a plan document, such as an instruction to invest" in a particular option "if financial goals demand the contrary." *Dudenhoeffer*, 573 U.S. at 421 (citing 29 U.S.C. § 1104(a)(1)(D)). Therefore, if the legacy TIAA annuities were imprudent investments as Plaintiffs contend, then the duty of prudence required Defendants to unilaterally transfer assets from the imprudent investments to prudent options, thereby overriding any contrary terms of the Plan incorporating a legacy contract restriction. As the Plan's named fiduciaries, Defendants possessed the "authority to control and manage the operation and administration of the plan" in accordance with ERISA's requirements. 29 U.S.C. § 1102(a)(1).

The second basis for the district court's ruling was a lack of evidence that other TIAA clients had "unilaterally mapped funds invested in TIAA legacy contracts to another investment without a participant's consent." SA113. But the fact that a fiduciary has yet to take a particular action does not show that the fiduciary lacks the *authority* to do so. And for purposes of the duty of prudence, Congress used an "objective prudent person standard," *Katsaros*, 744 F.2d at 279, based on how a hypothetical prudent fiduciary *would* act under the circumstances, not a historical

standard based on how a group of fiduciaries (who may or may not be prudent) *have* acted. *See* 29 U.S.C. § 1104(a)(1)(B) ("the care skill, prudence, and diligence . . . that a prudent man . . . would use"), SA210. While evidence that other TIAA clients acted similarly may be relevant, it is not dispositive. *See Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("If a given industry lags behind in adopting procedures that reasonable prudence would dictate be instituted," courts "are free to hold a given defendant to a higher standard of care than that adopted by the industry.").

In short, the district court's conclusion regarding the scope of Defendants' authority is contrary to *Hughes*, *Dudenhoeffer*, and the text of § 1104(a). Instead of precluding Plaintiffs from arguing that Defendants were imprudent for not unilaterally transferring legacy annuity assets, the court should have left the question to the jury to decide, under the totality of the circumstances, whether the contract language and lack of similar mapping by other plans justified allowing participants to remain invested in imprudent options. *See Tatum*, 761 F.3d at 367 (remanding to consider all relevant circumstances including terms of the plan in determining whether a prudent fiduciary would have made the same decision).

**III.  Plaintiffs are entitled to a new trial due to prejudice from Defendants' evidence and argument regarding irrelevant matters such as accusations of "lawyer-driven" litigation and Yale University's purported "generosity" in its non-fiduciary role as Plaintiffs' employer.**

**Standard of review:** A new trial is warranted when prejudice may have

50

entered into the jury's deliberations due to the conduct of opposing counsel in argument. *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 536, 539–40 (2d Cir. 1992). "Comments that improperly play to the sympathy of a jury may not be justified because of a tenuous substantive connection to a legal issue present in the case." *Id.* at 541.

Throughout trial, the district court allowed Defendants repeatedly to argue and elicit testimony that Yale University made "extremely generous" contributions to participants' accounts. *E.g.*, A336–A337 (Tr. 49:11–24, 61:10–24); SA148–SA150 (1481:21–1483:21). The court overruled Plaintiffs' objection to such evidence and denied Plaintiffs' request for a limiting instruction explaining that such contributions involve non-fiduciary conduct (an employer compensating its employees) that should not be considered in assessing whether Defendants fulfilled their fiduciary duty. SA144 (1225:11–23), SA146–SA147 (1231:5–1232:19), SA157–SA159 (3111:18–3113:16). When Plaintiffs sought to clarify on redirect of Plaintiff Vellali that the case was about Defendants' fiduciary administration of the Plan rather than Yale University's contributions, the court sustained Defendants' objections. SA151–SA152 (1498:21–1499:12). In closing, Defendants' counsel emphasized that "justice requires a verdict for Yale" in part because it made "generous" contributions to employees' retirement savings. A603–A604 (3740:11–3741:14).

51

Defendants were also permitted to inquire, over Plaintiffs' objection, into the circumstances of Plaintiffs hiring counsel—after seeing "an advertisement in a local New Haven paper where lawyers were soliciting clients to bring this lawsuit"—and the fact that Plaintiffs decided to bring the case "only after speaking with the lawyers." SA141–SA143 (985:22–987:15).

Defense counsel's closing argument again praised Yale for its generosity while attacking Plaintiffs and their counsel:

> Why are Plaintiffs suing Yale . . . when the named Plaintiffs themselves had no complaints about their own retirement benefits? They are here, not because they believe Yale did anything wrong, but because they saw an ad in the local paper, the New Haven Register soliciting Yale Plan participants willing to lend their name so that these attorneys could file yet another lawsuit, this time against Yale, second-guessing members of the fiduciary committee.
>
> This is not a case of aggrieved individuals who have been done wrong. To the contrary, this is a lawyer-driven, manufactured, and packaged case where the same Plaintiffs' lawyers use the same experts over and over and give them cherry-picked information and data that leads the experts to the conclusions the lawyers want you to hear and then demand hundreds of millions of dollars from these individuals and Yale, even though the Plan they manage is able to provide plan participants with about 90 percent of the income they had while working for Yale and often a better standard of living in retirement than they had while they were working. Yale truly provided a generous and beloved plan with amazing services and options at relatively low cost.

A606–A607 (3743:24–3744:25).

The Court overruled Plaintiffs' objection to this argument as well. SA199–SA200 (3736:16–3737:23). The Court also instructed the jury, over Plaintiffs'

objection, that "class members were not given a choice as to whether to be a member of the class." A190; A599–A600 (3604:20–3605:3); SA187 (3668:17–19).

The effect of defense counsel's comments and the district court's overruling of Plaintiffs' objections and declining to issue curative instructions was to invite the jury to be influenced by matters unrelated to the merits. Defendants' clear intent was to engender sympathy and discredit Plaintiffs by evoking images of greedy class-action lawyers using the "local New Haven paper" to find clients willing to demand "hundreds of millions of dollars" from a "generous" pillar of the community, filing "yet another" "manufactured" lawsuit with the same experts who have been paid "over and over" to say what "the lawyers want you to hear." Such a naked appeal to prejudice was wholly improper and deprived Plaintiffs of a fair trial by "directing the jury's focus away from the elements of the case to an extraneous and inflammatory consideration." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 763 (7th Cir. 2013). Because arguments attacking counsel's motives were not a proper argument for the jury to consider and may have influenced its decision, a new trial is warranted. *Id.*; *Pappas*, 963 F.2d at 536, 539–40.

In addition to being improper and irrelevant, the discussion of these matters was substantively misleading. Argument based on Yale University's supposedly generous contributions to the Plan misleadingly suggested to the jury that it should weigh the contributions against the alleged losses, creating a risk that the jury, on

53

balance, would find "no harm, no foul" from any fiduciary breach. An employer's contributions to a retirement plan "are not a gratuity" but part of the compensation offered to attract and retain talented workers. *Chao v. Hall Holding Co.*, 285 F.3d 415, 443 (6th Cir. 2002). Critically for ERISA purposes, contributions to a plan are not a fiduciary act. *Brotherston*, 907 F.3d at 28 ("In making discretionary contributions, [defendant] acted as employer providing compensation to its employees, not as fiduciary."). Therefore, an employer's plan contributions, whether generous or not, are "irrelevant to the analysis" of whether the employer complied with ERISA. *Id*. at 29. Without a limiting instruction to that effect, evidence and argument regarding Yale's Plan contributions may have improperly influenced the jury to effectively provide an "offset" for the harm caused by Defendants' fiduciary breaches. *See id*.

The instruction that "class members were not given a choice as to whether to be a member of the class," SA187 (3668:17–19), was evidently intended by Defendants to further the "lawyer-driven litigation" narrative by creating an impression that class-action lawyers forced Yale's employees to be part of the case. The court certified the class under Rule 23(b)(1)—without objection by Defendants[12]—which prohibits opt outs because it applies to cases in which

---

[12] Defendants challenged standing and Rule 23(a)(4) adequacy but did not dispute the propriety of Rule 23(b)(1) certification. *See* Doc. 157.

"individual adjudications would be impossible or unworkable." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011). ERISA fiduciary breach claims are "paradigmatic examples" of proper Rule 23(b)(1) classes. *E.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009); *see also Coan v. Kaufman*, 457 F.3d 250, 261 (2d Cir. 2006) (noting in an ERISA case brought under 29 U.S.C. § 1132(a)(2) that breach of trust actions are "[c]lassic examples" of Rule 23(b)(1)(B) classes). In fact, allowing opt outs in this type of action can be an abuse of discretion because it exposes the defendant to potential serial litigation and incompatible standards. *Piazza v. EBSCO Indus.*, 273 F.3d 1341, 1352 (11th Cir. 2001); *see also Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir. 1977) ("[W]hen a class action may be certified under either (b)(1) or (b)(3), the former should be chosen."); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 165 (S.D.N.Y. 2017), *pet. denied*, No. 17-3978 (2d Cir. Feb. 13, 2018). Without this additional context, the instruction was misleading.

Similarly, Defendants' questions eliciting testimony to the effect that Plaintiffs did not have complaints about the Plan until contacting counsel misleadingly suggested that the Plaintiffs should have been able to detect any problems themselves. SA143 (987:7–15). The claims in this case involve "technical financial decisions affecting billions of dollars in assets and Plan fiduciaries' compliance with the requirements of ERISA." *Moreno v. Deutsche Bank Ams. Holding Corp.*,

No. 15-9936, 2017 U.S. Dist. LEXIS 143208, at *20 (S.D.N.Y. Sep. 5, 2017).

Because practices such as revenue sharing are "opaque" and cannot "plausibly be described as transparent," *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 907 (7th Cir. 2013), "[t]he average person would have no reason to believe that the administrator of his 401(k) plan was acting imprudently" before contacting counsel, *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). Thus, Defendants' "lawyer-driven litigation" narrative was a misleading and irrelevant distraction from the jury's proper focus on whether the *fiduciaries'* conduct was prudent. *See PBGC*, 712 F.3d at 716.

## IV. The district court erred in granting summary judgment on Plaintiffs' prohibited transaction claims (Count II, IV, and VI).

**Standard of review:** A grant of summary judgment is reviewed de novo. *Tompkins v. Metro-N. Commuter R.R. Co.*, 983 F.3d 74, 78 (2d Cir. 2020).

This Court's decision in *Cunningham* compels reversal of summary judgment on Plaintiffs' prohibited transaction claims (Counts II, IV, VI). SA106–SA109.

In *Cunningham*, the district court granted a Rule 12(b)(6) motion to dismiss similar prohibited transaction claims on the ground that the relationships between Cornell University's defined-contribution plans and their recordkeepers, TIAA and Fidelity, were outside the scope of § 1106(a)(1). *Cunningham*, 2023 U.S. App. LEXIS 30195, at *16, *20. According to the district court, that provision only bars transactions involving "self-dealing or disloyal conduct." *Id.* at *20.

56

This Court disagreed, holding that "the language of § 1106(a)(1) cannot be read to demand explicit allegations of 'self-dealing or disloyal conduct.'" *Id.* The Court nevertheless affirmed the dismissal on the ground that the plaintiffs failed to adequately allege that the plans did not qualify for a statutory "exemption for reasonable and necessary transactions codified by § 1108(b)(2)(A)." *Id.* at *20–21, *27–30. But the Court left "undisturbed" its "prior decisions holding that it is ultimately the defendant fiduciary that bears the burden of persuasion with regard to the applicability of the § 1108 exemptions." *Id.* at *26. Thus, "while the fiduciary retains the ultimate burden of proving the appropriateness of the transaction pursuant to § 1108(b)(2)(A), it falls on the plaintiff in the first instance to allege—and, at the summary judgment stage, to produce evidence of—facts calling into question the fiduciary's loyalty by challenging the necessity of the transaction or the reasonableness of the compensation provided." *Id.* at *27.

The district court here explicitly relied on the *Cunningham* district court's reasoning, granting summary judgment due to a lack of evidence that Defendants "engaged in self-dealing or other disloyal conduct with intent to benefit a party [in] interest." SA108–SA109. That was error, as "the language of § 1106(a)(1) cannot be read to demand explicit allegations"—or evidence at the summary judgment stage—"of 'self-dealing or disloyal conduct.'" *Cunningham*, 2023 U.S. App. LEXIS 30195, at *20. Accordingly, summary judgment on Counts II, IV, and VI

must be reversed.

The district court did not reach Defendants' alternative argument that the transactions at issue qualify for the § 1108(b)(2)(A) exemption. But in any event, Plaintiffs' evidence calls into question both the necessity of the services and the reasonableness of TIAA's and Vanguard's compensation. *See Cunningham*, 2023 U.S. App. LEXIS 30195, at *27. Indeed, given the jury's finding of a loss to the Plan on the First Claim, there is necessarily a genuine dispute as to whether the recordkeepers received unreasonable compensation for their services, and Defendants will bear the ultimate burden of proving reasonableness at trial. *Id*. at *26. Although recordkeeping is a necessary service, it was *unnecessary* for Defendants to retain two recordkeepers, an inefficient structure which increased fees. *See DePerno*, 18 F.3d at 181–83 (requiring trustee to justify hiring four maintenance workers instead of two). Accordingly, summary judgment should be reversed, and the prohibited transaction claims remanded for trial.

## CONCLUSION

The Court should vacate the judgment and remand for further proceedings.

December 7, 2023                    Respectfully submitted,

                                   /s/ *Sean E. Soyars*
                                   Jerome J. Schlichter
                                   Sean E. Soyars
                                   Nathan D. Stump
                                   Joel D. Rohlf
                                   SCHLICHTER BOGARD LLP
                                   100 S. Fourth Street, Suite 1200
                                   St. Louis, Missouri 63102
                                   (314) 621-6115

                                   *Counsel for Plaintiffs-Appellants-Cross-*
                                   *Appellees*

## CERTIFICATE OF COMPLIANCE

1. I certify that this brief contains 13,873 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and thus complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(A) and Local Rule 28.1.1(a).

2. I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word Times New Roman 14-point font.

*s/ Sean E. Soyars*
Counsel for Plaintiffs-Appellants-Cross-Appellees
December 7, 2023

## CERTIFICATE OF SERVICE

On December 7, 2023, I electronically filed this Brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. I further certify that all counsel of record are Filing Users and are served electronically by the Notice of Docket Activity.

s/ *Sean E. Soyars*
Counsel for Plaintiffs-Appellants-Cross-Appellees
December 7, 2023